```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division

UNITED STATES OF AMERICA,      )
                               )
          v.                   )
                               )    1:08cr45(JCC)
WILLIAM DEMETRIUS HARRIS,      )
                               )
       Defendant.              )
```

## **M E M O R A N D U M   O P I N I O N**

### (STATEMENT OF REASONS)

This matter is before the Court for sentencing.

### I. Background

On February 27, 2008, Defendant William Demetrius Harris ("Defendant") pled guilty to possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1).  According to the Statement of Facts that accompanied the plea, Defendant sold crack cocaine in quantities ranging from 3 grams to 5.6 grams on six separate occasions during May, June, and July of 2006 in his home in Manassas, Virginia.  In addition, on August 3, 2006, Defendant possessed 52.9 grams of crack cocaine in his home with the intent to distribute the drug.  *See* Statement of Facts, Dkt. 5, at 1-2.

In the Plea Agreement between Defendant and the Government, the parties agreed to recommend that U.S.S.G. § 2D1.1(c) applies and establishes a base offense level of 30.  The Government also agreed to move for an additional one-level

reduction pursuant to U.S.S.G. § 3E1.1(b) provided that Defendant qualifies for a two-level reduction for acceptance of responsibility under § 3E1.1(a) and his offense level is 16 or greater. *See* Plea Agreement, Dkt. 4, ¶ 5.

The pre-sentence report ("PSR") prepared for Defendant places him as a category VI offender with a total offense level of 34, yielding a guidelines range of 262 to 327 months. To reach this recommendation, the PSR first applies § 2D1.1(a)(3)(c)(5) for a base offense level of 30 and then deducts three levels for acceptance of responsibility. The PSR then finds that Defendant qualifies under § 4B1.1 for career offender status based on two prior felony convictions, the most recent being a 1998 conviction for larceny from a person. Factoring in the three-level reduction for acceptance of responsibility, this places Defendant's total offense level at 34 with a criminal history category of VI.[1]

Defendant objects to the application of the career offender guideline in this case. Defendant contends that the appropriate offense level is 27, based on a base offense level of 30 and a three-level reduction for acceptance of responsibility. He also argues that the appropriate criminal history category is IV, which at offense level 27 yields a restricted guidelines

---

[1] When the career offender guideline applies, a defendant is automatically placed in criminal history category VI. U.S.S.G. § 4B1.1(b).

range of 120 to 125 months. Defendant then requests a sentence equivalent to the mandatory minimum of 120 months' imprisonment.

## II. Analysis

### A. The Application of U.S.S.G. § 4B1.1

Under U.S.S.G. § 4B1.1, a defendant may be deemed a career offender if: (1) the defendant was at least 18 years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony and either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. The term "crime of violence" is defined in U.S.S.G. § 4B1.2(a) as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury or to another.

The Commentary to the Guidelines enumerates several examples of a "crime of violence," including murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. *Id.* comment 1.

Here, in concluding that Defendant is applicable for the career offender guideline, the PSR relies on two prior convictions: (1) a February 9, 1996 conviction for dispensing

3

cocaine; and (2) a June 11, 1998 conviction for larceny from a person. Defendant does not dispute that his cocaine conviction qualifies under § 4B1.2. However, Defendant contends that his conviction for larceny from a person does not qualify because it is not a crime of violence. If Defendant's interpretation of the law is correct, the career offender guideline is inapplicable.

Under Virginia law, a theft is larceny from a person if property is taken either from the victim's physical possession or from "his immediate custody and control." *Garland v. Commonwealth*, 446 S.E.2d 628, 630 (Va. Ct. App. 1994). In *United States v. Smith*, 359 F.3d 662 (4th Cir. 2004), the Fourth Circuit, relying on *Garland* and the decisions of other federal appellate courts, determined that larceny from a person is a crime of violence. *Id.* at 665. The Court noted that while larceny from a person was not one of the offenses enumerated in § 4B1.2(a)(2) and did not fall within the scope of § 4B1.2(a)(1), it did otherwise involve conduct that presented a serious potential risk of physical injury to another. *Id.* at 664-65.

Defendant, however, argues that the Supreme Court in *Begay v. United States*, 128 S. Ct. 1581 (2008), interpreted the definition of "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), in a manner that dramatically alters the analysis of what constitutes a "crime of violence" for purposes of the career offender guideline. ACCA

4

defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). As an initial matter, given the similar language between U.S.S.G. § 4B1.2(a) and 18 U.S.C. § 924(e)(2)(B), the Court agrees with Defendant's contention that the analysis of the meaning of "violent felony" for purposes of ACCA is directly relevant to the analysis of the meaning of "crime of violence" for purposes of the career offender guideline. *See United States v. Martin*, 215 F.3d 470, 474 n.4 (4th Cir. 2000); *United States v. Johnson*, 246 F.3d 330, 333 n.5 (4th Cir. 2001).

Turning to the merits of the decision, the Court in *Begay* examined clause (ii) of ACCA's definition of "violent felony" to determine whether driving under the influence of intoxicating liquor otherwise involved conduct that presented a serious potential risk of physical injury to another.[2] The Court found that the presence of the listed examples of burglary,

---

[2] Much like the Fourth Circuit in *Smith* found that larceny from a person was not one of the offenses enumerated in U.S.S.G. § 4B1.2(a)(2) and did not fall within the scope of § 4B1.2(a)(1), so too did the Supreme Court in *Begay* find that driving under the influence was not one of the offenses enumerated in 18 U.S.C. § 924(e)(2)(B)(ii) and did not fall within the scope of § 924(e)(2)(B)(i).

arson, extortion, or crimes involving explosives in clause (ii) indicated that the clause only covered "*similar* crimes, rather than *every* crime" that presents a serious potential risk of physical injury to another. *Begay*, 128 S. Ct. at 1585. The Court explained that these examples limit the coverage of clause (ii) to crimes that are "roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* Applying this standard to driving under the influence, the Court drew a contrast between that offense and the listed crimes, noting that the latter "all typically involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 1586. The Court distinguished driving under the influence on the grounds that it was most nearly comparable to a strict liability crime and less closely associated "with a likelihood of future violent, aggressive, and purposeful" conduct than the listed crimes. *Id.* at 1586-88.

Applying *Begay* to this case, the Government argues that larceny from a person is "similar in kind" to "burglary of a dwelling," which is one of the crimes specifically enumerated in § 4B1.2(a)(2). The Government contends that both crimes involve the intentional taking of property of another and the invasion of one's personal space. It further argues that larceny from a person potentially poses a greater risk of violence than burglary of a dwelling, given the often close contact between the perpetrator and the victim. The Government then recites the

facts surrounding Defendant's own conviction for larceny from a person, which are included in the PSR and were obtained from the Prince William County pre-sentence report for that conviction. However, in deciding whether a prior conviction is a "violent felony" or a "crime of violence," sentencing courts may look only to the fact of conviction, the statutory definition of the offense, and documents such as the indictment or plea agreement. *Shepard v. United States*, 544 U.S. 13, 16 (2005); *Taylor v. United States*, 495 U.S. 575, 600-02 (1990); *United States v. Pierce*, 278 F.3d 282, 286 (4th Cir. 2002).  Here, because Defendant's indictment for larceny from a person does not provide the circumstances surrounding the offense, *see* Ex. 1 to Def.'s Position with Regard to Sentencing, the Court will turn to the statutory definition to determine whether larceny from a person qualifies as a crime of violence.

      Virginia Code § 18.2-95 states that "[a]ny person who . . . commits larceny from the person of another of money or other thing of value of $5 or more . . . shall be guilty of grand larceny."  Va. Code § 18.2-95.  Virginia courts have often defined larceny from a person by distinguishing it from robbery, which it has defined as "larceny from the person, or in his presence, by violence or intimidation."  *Comer v. Commonwealth*, 176 S.E.2d 432, 435 (Va. 1970); *see also Commonwealth v. Hudgins*, 611 S.E.2d 362, 365 (Va. 2005)("[P]roof of violence or

intimidation is required in a prosecution for robbery but not for grand larceny from the person."). For larceny from a person to become robbery, additional circumstances must be present, such as "when a struggle ensues, where the victim is knocked down, or where the victim is put in fear." *Winn v. Commonwealth*, 462 S.E.2d 911, 913 (Va. Ct. App. 1995). These cases suggest that larceny from a person typically occurs without violence and that the addition of violence or intimidation would likely convert larceny from a person into robbery.

The answer to the question before the Court, however, rests not on the differences between larceny from a person and robbery, but on the similarities between the former and burglary of a dwelling. *Begay* defines burglary as "the unlawful or unprivileged entry into a building or other structure with 'intent to commit a crime.'" *Begay*, 128 S. Ct. at 1586. The Court here concurs with the Government's assessment that both larceny from a person and burglary of a dwelling are similar in kind in that they both involve the intentional taking of property of another and the invasion of one's personal space. The Court also agrees that larceny from a person poses at least a similar risk of violence as burglary of a dwelling. As other courts have held, "any person falling victim to a crime involving such an invasion of personal space" as that which occurs in larceny from a person "would likely resist or defend in a manner that could

8

lead to immediate violence." *United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998); *see also United States v. De Jesus*, 984 F.2d 21, 25 (1st Cir. 1993)(finding that larceny from a person "bears an inherent risk of violent outbreak"); *Garland*, 446 S.E.2d at 630 (remarking that larceny from a person "recognizes enhanced societal concern for conduct that implicates at least a potential for personal assault, conduct that involves the person of the victim and jeopardizes his personal security"). Moreover, unlike the crime at issue in *Begay*, driving under the influence, larceny from a person involves intentional conduct and is as closely associated with a likelihood of future violent, aggressive, and purposeful conduct as burglary from a dwelling. *See Begay*, 128 S. Ct. at 1586-88. Consequently, the Court finds that larceny from a person is roughly similar in kind as well in degree of risk posed to burglary of a dwelling, and is therefore a "crime of violence" within the definition of U.S.S.G. § 4B1.2(a). Thus, the career offender guideline applies to Defendant. The application of this guideline gives Defendant a total offense level of 34 and criminal history category of VI, which yields a guidelines range of 262 to 327 months.

### **B. Request for a Sentence Outside the Guidelines Range**

Defendant also argues that, in the event the Court finds that the career offender guideline applies and the applicable guidelines range is 262 to 327 months, the Court

should depart downward and sentence Defendant to the mandatory minimum of 120 months. The Government, by contrast, asks for a sentence within the guidelines range.

After *United States v. Booker*, 543 U.S. 220 (2005), imposing a sentence under the advisory guidelines is a multi-step process. First, the district court "must correctly determine, after making appropriate findings of fact, the applicable guidelines range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). Next, the court must consider whether a sentence within that range "serves the factors set forth in [18 U.S.C.] § 3553(a) and, if not, select a sentence within statutory limits that does serve those factors." *Id.* (internal quotations omitted). The factors to be considered include the nature and circumstances of the offense, the history and characteristics of the defendant, the sentencing range established by the Guidelines, any pertinent policy statements issued by the Sentencing Commission pursuant to its statutory authority, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a); *see also Kimbrough v. United States*, __ U.S. __, 128 S. Ct. 558 (2007). In addition, § 3553(a) provides that a district court should impose a sentence that is "sufficient, but not greater than necessary," for the sentence to: (1) reflect the seriousness of the offense, promote

respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed education or correctional treatment. *Id.*

In addition, the Supreme Court in *Kimbrough* found that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 128 S. Ct. at 575. The *Kimbrough* Court also noted that, "as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Id.* at 570 (internal quotation marks omitted). In other words, *Kimbrough* allows a sentencing court to disagree on policy grounds with a judgment of the Sentencing Commission even when the offense at issue falls squarely within the type of case to which the Sentencing Commission intended a particular guideline to apply.

Finally, in *Gall v. United States*, __ U.S. __, 128 S. Ct. 586 (2007), the Supreme Court reiterated that appellate review of district courts' sentencing decisions is "limited to determining whether they are 'reasonable.'" *Id.* at 594. While a district judge "must give serious consideration to the extent of

11

any departure from the Guidelines and must explain his conclusion that an unusually lenient or unusually harsh sentence is appropriate . . . with sufficient justifications," he "may not presume the Guidelines range is reasonable . . . [and] must make an individualized assessment based on the facts presented." *Id.* at 594-97.

After a deliberate and painstaking consideration of all the § 3553(a) factors, the Court finds that a sentence within the applicable guidelines range does not serve those factors and is greater than necessary to comply with the purposes set forth in § 3553(a)(2). Accordingly, the Court will grant a downward departure from the applicable guidelines range. In coming to this conclusion, the Court considered numerous factors:

(1) <u>Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>

Defendant has been convicted of possessing with the intent to distribute 50 grams or more of crack cocaine. This is undoubtedly a serious offense, and its seriousness is reflected in the 120 month minimum sentence mandated by Congress. However, the applicable guidelines range in this case, but for Defendant's career offender status, is 100 to 125 months, a range that falls mostly below the mandatory minimum. This suggests that the crime for which Defendant was convicted does not, in and of itself, warrant a sentence of more than 140 months beyond the mandatory minimum.

As to Defendant's history and characteristics, Defendant has a mixed background. While he had several run-ins with the law in the 1990s – including convictions for cocaine distribution and larceny from a person – Defendant has no other criminal convictions between 1998 and the instant offense. Defendant was released from the Virginia Department of Corrections in 2000 and satisfactorily completed his probation on September 21, 2004. However, according to the Government, Defendant has tested positive for PCP and marijuana since his guilty plea in February 2008, which casts some doubt on Defendant's ability to stay clean. Moreover, Defendant claims he had a good childhood, and therefore cannot blame his errant behavior on a poor upbringing.

(2) The Sentencing Range Established by the Guidelines and Policy Statements Issued by the Sentencing Commission

In this case, were Defendant to have been convicted of distributing between 50 and 150 grams of powder cocaine, upon application of the career offender guideline and acceptance of responsibility, Defendant would have been facing a guidelines range of 151 to 188 months.[3] Relying on *Kimbrough*, the Court finds that the application of the career offender provision in the context of this particular crack-cocaine case – where the

---

[3] This calculation is based on the fact that, under U.S.S.G. § 4B1.1, crimes with statutory maximum sentences of 20 years – such as possession with intent to distribute between 50 and 150 grams of powder cocaine – have a base offense level of 32. After applying acceptance of responsibility, the total offense level is 29, which with a criminal history category of VI yields a guidelines range of 151 to 188 months.

13

career offender status is based on a ten year-old conviction for larceny from a person – reveals the inherent harshness of the crack cocaine/powder cocaine disparity and reflects unsound sentencing policy.

(3) <u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote the Respect for the Law, Provide Just Punishment, Deter Future Crimes, Protect the Public, and Provide Defendant with Treatment</u>

The Court finds that a sentence within the guidelines range of 262 to 327 months is greater than necessary to achieve the purposes set forth in § 3553(a)(2).  First, given that Defendant is 31 years old, even if he is sentenced to the mandatory minimum, he will be at least 41 years old when he is released.  The Sentencing Commission has found that recidivism rates decline relatively consistently as age increases, and Defendant's age and criminal history predict a 42.7% likelihood of recidivism.  *See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, U.S. Sentencing Commission, May 2004, at 12, Ex. 9.  In addition, prior to the instant offense Defendant has not been convicted of a crime since 1998.  This substantial lapse in time between convictions, coupled with his age upon release even if he is only sentenced to the mandatory minimum, indicates to the Court that a sentence of 262 months would be much greater than necessary to protect the public from Defendant's future crimes.

Moreover, a sentence within the applicable guidelines range would be greater than necessary for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. As the Court has already discussed, but for Defendant's career offender status, the applicable guidelines range would be 120 to 125 months. The Court finds that an increase of roughly 140 months based on a drug conviction from 1996 and a larceny conviction from 1998 would be far greater than necessary to achieve these sentencing ends.

### III.  Conclusion

For these reasons, the Court concludes that a sentence within the guidelines range of 262 to 327 months would not serve the factors set forth in 18 U.S.C. § 3553(a). Accordingly, the Court will grant a downward departure from the applicable guidelines range. The Court finds that the appropriate offense level is 31, which with a criminal history category of VI yields a range of 188 to 235 months. The Court further finds that a sentence of 188 months properly serves the factors set forth in 18 U.S.C. § 3553(a) and is sufficient, but no greater than necessary, to achieve the purposes of § 3553(a)(2).

May 29, 2008  _____/s/_____
Alexandria, Virginia           James C. Cacheris
                        UNITED STATES DISTRICT COURT JUDGE